UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
|---|---|---|
| VERSUS | * | NO. 91-473 |
| THOMAS R. KENNEDY | * | SECTION "F" |

**SUPPLEMENTAL BRIEFING IN SUPPORT OF**
**DEFENDANT'S MOTION UNDER 18 U.S.C. § 3582(c)(2)**

**NOW INTO COURT,** comes the defendant Thomas R. Kennedy, through counsel and provides this supplemental briefing in support of his motion.

In the nearly 24 years since Thomas Kennedy was sentenced to die in prison for a non-violent drug offense the world has changed. Policies have been amended, the law has evolved, and Mr. Kennedy has grown up. Undersigned counsel has been appointed to demonstrate that Mr. Kennedy's life without parole[1] sentence may be reviewed in light of subsequent developments to the sentencing guidelines, and that in reconsidering that sentence, this Court should impose a lesser sentence and give Mr. Kennedy a chance at redemption.

**I.**

This Court has the authority to conduct resentencing pursuant to 18 U.S.C. § 3582(c)(2). Review under § 3582(c)(2) is a two-step analysis. First, the threshold

---

[1] Mr. Kennedy was sentenced to "life imprisonment." Because the federal system abolished parole in 1984, Sentencing Reform Act of 1984, Pub. L. No. 98-471, 90 Stat. 1987, all life sentences imposed in the federal system are without parole. Accordingly, for the sake of accuracy and clarity undersigned counsel will refer to Mr. Kennedy's sentence as life without parole.

question: whether the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)." *Id.* Second, if this basis is found, the court considers the factors in 18 U.S.C. § 3553 to determine whether and how much to reduce the defendant's sentence pursuant to the change. In the case of Mr. Kennedy, two amendments to the Sentencing Guidelines satisfy the threshold inquiry—Amendment 591, and Amendment 505. As each of these amendments on its own authorizes this Court to reach step two and conduct § 3582(c)(2) resentencing, each will be taken in turn.

*A. Amendment 591*

First, as Mr. Kennedy argued in his initial motion, Amendment 591 when applied to the facts of his case, results in a lower sentencing range for his conviction. As Mr. Kennedy explains, because his original conspiracy conviction (count 2 of the indictment) was vacated on appeal, under the logic of 591 that offense is no longer available as the basis for calculating his guidelines range for the remaining continuing criminal enterprise conviction. The argument is far from academic—without the availability of a particular offense to cross-reference with § 2D1.1, the default offense level of 38 from § 2D1.5(a)(2) would apply. Mr. Kennedy carefully and persuasively briefed this issue in his initial motion, and that argument is incorporated here by reference.

*B. Amendment 505*

Alternatively, Amendment 505 properly triggers § 3582(c)(2) review of Mr. Kennedy's sentence. Indeed, Amendment 505 was the basis for Mr. Kennedy's 2009

motion under § 3582(c)(2), and at that time this Court conclusively determined that Amendment 505 qualifies under § 3582(c)(2) as a subsequent modification that lowers the sentencing range applicable to Mr. Kennedy. *See United States v. Kennedy*, Cr. No. 91-473 "F" (E.D. La. Nov. 23, 2009) (Order and Reasons, Rec. Doc. No. 201, p. 3).

There is no dispute that Amendment 505 would reduce Mr. Kennedy's sentencing range from a mandatory life without parole sentence, to a sentence as low as 30 years (360 months).[2] The only question is whether this Court may consider Amendment 505 as a basis for § 3582(c)(2) review when Mr. Kennedy has previously sought relief under that amendment. The Fifth Circuit does not appear to have addressed this question, but two other circuits that have considered the issue have held that the plain meaning of § 3582(c)(2) does not bar successive petitions under the same amendment where, as here, the previous review did not disturb the defendant's original sentence. The Ninth Circuit explained:

> Section 3582(c)(2) states:
>
>> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant ..., the court may reduce the term of imprisonment, after considering the factors set forth in section § 3553(a) to the extent that they are applicable, if such a reduction is consistent

---

[2] Under that amendment, Mr. Kennedy's base offense level would be 38. With the 4 level increase for a continuing criminal enterprise conviction under § 2D1.5(a)(1), this would result in an offense level of 42.

> with applicable policy statements issued by the sentencing commission.
>
> 18 U.S.C. § 3582(c)(2). The statute in terms clearly does not prohibit a second motion. The government contends, however, that [the defendant's] second motion does not qualify for § 3582(c)(2)'s exception because he was serving the sentence imposed by the district court in response to his first motion under that section, and the Sentencing Commission did not lower the Guideline "subsequently" to that sentence.
>
> The government's argument relies on a strained reading of the statute, and a mischaracterization of the first motion proceeding. The sentence that [the defendant] is serving is the one originally imposed upon him when he was convicted. That sentence was not modified by the district court in response to [the defendant's] first motion under § 3582(c)(2); the court simply declined to "exercise its discretion to lower Trujillo's sentence below its current level." To construe that ruling as the occasion on which Trujillo was "sentenced to a term of imprisonment" within the meaning of § 3582(c)(2) is neither a reasonable interpretation of the statute nor a reasonable description of what happened at the first motion hearing. *See Dillon v. United States,* ⸺ U.S. ⸺, 130 S.Ct. 2683, 2691, 177 L.Ed.2d 271 (2010) ("[A] district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense."). Trujillo was, and is, serving a sentence of imprisonment imposed upon him at the time of his conviction, and the district court had jurisdiction under § 3582(c)(2) to entertain his second motion because the term of that sentence was "subsequently" lowered by the Sentencing Commission.

*United States v. Trujillo*, 713 F.3d 1003, 1005-08 (9th Cir. 2013). Confronted with the same issue the Third Circuit was more circumspect, but also acknowledged that § 3582(c)(2) could not be read to include a jurisdictional bar on successive motions:

> Though our sister courts may be right that such silence, when read in light of the statute's purpose of restricting a district

> court's authority to revisit a criminal sentence, means that a defendant is only entitled to one bite at the apple, it does not follow that this restriction goes to the subject matter jurisdiction of the district court. After all, a rule derived from congressional silence does not support an inference that Congress has "clearly stated" its intent to limit a district court's jurisdiction to one § 3582(c)(2) motion. Thus any restriction on the filing of successive § 3582(c)(2) motions is not a limitation on the district court's subject matter jurisdiction.

*United States v. Weatherspoon*, 696 F.3d 416, 421 (3d Cir. 2012) (citations omitted).

Another element of the plain language in § 3582 also supports this reading permitting successive motions under a single amendment. While the paragraph immediately prior, 18 U.S.C. § 3582(c)(1)(B), instructs that "the court may modify an imposed term of imprisonment to the extent otherwise *expressly permitted by . . . Rule 35 of the Federal Rules of Criminal Procedure*," (emphasis added) no such reference to Rule 35 exists in the parallel provision of § 3582(c)(2). With the reference to Rule 35 (and its 14-day time limit on the correction of a sentence) Congress expressly wrote a limit into § 3582(c)(1)(B), but declined to do so in § 3582(c)(2). Comparing these two provisions permits the inference that Congress intended not to impose a similar Rule 35 limitation on § 3582(c)(2). *See, e.g., Rodriguez v. United States*, 480 U.S. 522, 525 (1987) (holding that, "where Congress includes particular language in one section of a statute but omits it in another section... it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks omitted); *cf. Brogan v. United States*, 522 U.S. 398, 408 (1998) ("courts may not create their own

limitations on legislation, no matter how alluring the policy arguments for doing so"); *King v. St. Vincent Hospital*, 502 U.S. 215, 220-21 (1991) (holding that where a statute is silent about a limit, no limit should be inferred, especially where other portions of the statute affirmatively impose limits). Consistent with these arguments, this Court has the authority to consider Mr. Kennedy's motion on the basis of Amendment 505 notwithstanding his previous motion on the same amendment.

## II.

Condemning Thomas Kennedy to die in prison is a tragic waste. It is a waste of his obvious potential to meaningfully contribute to society, it is a waste of desperately-taxed resources, and it is a waste of the moral force of this system's de facto harshest punishment.

*A. Thomas Kennedy's life without parole sentence squanders his potential.*

Thomas Kennedy has spent nearly half his life in prison for this non-violent drug crime. Without this Court's intervention, 54-year-old Mr. Kennedy will live out the rest of his days and die at Lompoc Correctional. In spite of these hopeless circumstances, Mr. Kennedy has matured in prison into an accomplished and well-adjusted man. In his 24 years behind bars Mr. Kennedy has maintained a stellar disciplinary record—receiving just three minor incident reports, and *zero* serious incident reports, and managing to survive without ever having gotten into a fight. Mr. Kennedy has seized every opportunity he has access to—he has completed every single self-help course offered by

the Bureau of Prisons, he has become a licensed barber, and a published author, and is one math class away from earning his college degree. Given this drive, it is unsurprising that Mr. Kennedy has become an example to younger inmates—he facilitates Self-Awareness reentry development classes, and mentors at-risk youth. He does all this in spite of having been sentenced to die in prison.

A former inmate and mentee of Mr. Kennedy named Jonathan Longmire writes to this Court in support of Mr. Kennedy's motion. He describes arriving at Lompoc "bitter, stuck in my ways, and confused about who I was, what I wanted to do with myself during my stay in prison, and how I was going to accomplish anything once I was released." Letter of Jonathan Longmire (Attached as Exhibit-1). Soon, however, "I [met] a very inspirational man, Mr. Kennedy who helped me transform my thinking from being a negative person to a positive one." *Id*. Mr. Longmire describes taking a self-help course taught by Mr. Kennedy, "I listened to Mr. Kennedy and applied his advice because he showed me how much he cared for youngsters my age that have taken the wrong turn in their lives by giving his time and energy to see that we implemented new actions and positive thinking into our daily lives." *Id*. Mr. Longmire's affection is obvious: "Mr. Kennedy was not only a mentor, he was a father figure that I never had." *Id*. Mr. Longmire was eventually released from federal prison and proudly reports that, due in part to Mr. Kennedy's influence, he has turned his life around—"today I am free and ambitiously working toward accomplishing my heart's desire. Which are to become a mentor in my community and a successful businessman." *Id*.

In determining a sentence this Court considers, *inter alia*, "the history and characteristics of the defendant," § 3553(a)(1), and "the need for the sentence imposed … to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," § 3553(a)(2)(C) – (D). In light of Mr. Kennedy's exemplary conduct, these factors strongly support a lesser sentence.

If released, Mr. Kennedy would not be alone, he would return to a loving and supportive network of family and friends. Even from prison Mr. Kennedy has maintained close relationships, supporting and encouraging his loved ones to make better choices than he did. *See* Letter of Renea Kennedy (Attached as Exhibit-2). Mr. Kennedy's family misses him, and several family members have written letters to this Court pleading for leniency. His sister Linda has seen Mr. Kennedy turn his life around since entering prison:

> The Thomas of today very much regrets the foolish decisions he made decades ago. He has shown remorse for the pain he caused our family and others … He has evolved into the person our parents were molding him to be … because of whom he is now I feel he deserves the opportunity to demonstrate these positive attributes as a free man. He has a lot he can offer to society please give him the opportunity to do so.

Letter of Linda N. Kennedy (Attached as Exhibit-3). While Mr. Kennedy has been able to have a close relationship with his grandson, his daughter-in-law hopes that one day Mr. Kennedy will be able to spend time with him outside prison walls:

> If you can think about his grandson and what he signifies in his life, and what it would mean [to his grandson Joshua] to be able to

> see his papa whenever he wants, have dinner with him and watch football on Sundays … Joshua would love to have his grandpa home and not have to go visit him 3 hours away … He would love to be able to do more with him without limitations … Thomas is a great man with a kind heart. I would love for him to be set free so that he can be in Joshua's life.

Letter of Denise Guzman (Attached as Exhibit-4). One of Mr. Kennedy's nieces writes "I believe the new and wiser Thomas Ray would benefit the world tremendously." Letter of Briana Kennedy (Attached as Exhibit-5). A different niece vows support if Mr. Kennedy is returned to his family, writing "we understand that he stumbled and we are ready to support him as he gets back up and starts over." Letter of Geneall Kennedy (Attached as Exhibit-6). Mr. Kennedy's mother, Lucille Kennedy, simply pleads "judge, I just want my son home before I die." Letter of Lucille Kennedy (Attached as Exhibit-7).

*B. Thomas Kennedy's life without parole sentence taxes scarce resources.*

The reality is that if Mr. Kennedy were tried and sentenced today, he likely would have received a more lenient sentence. The intervening decades have seen a wholesale reevaluation of sentencing practices applied to non-violent drug offenders, and Mr. Kennedy's original sentence was based on a guidelines calculation that has undergone repeated judicial and legislative change aimed at injecting greater leniency and flexibility into drug sentencing.

First and most importantly, Mr. Kennedy's life sentence was the mandatory result of his guidelines calculation, even where his statutory mandatory minimum was only 20 years. PSR, p. 7-8, ¶¶ 45-46. The United States Supreme Court has since ruled the mandatory nature of the sentencing guidelines to be unconstitutional. *United States v.*

9

*Booker*, 543 U.S. 220 (2005). While *Booker* is not available retroactively, its reasoning still provides compelling evidence of the changes wrought since Mr. Kennedy's original sentence.

Second, had they been applicable at the time, several guidelines amendments and the *Booker* decision would have changed both the way that drug quantity was calculated in this case, and the impact that quantity had on the ultimate sentence. Again, while these changes are not retroactive, they are illustrative of the sort of sentencing Mr. Kennedy would be subject to today.

Mr. Kennedy was sentenced based on a drug quantity of 1,422 kilograms of cocaine. This is over five times the quantity in his indictment (the continuing criminal enterprise charged in count one alleges five underlying offenses totaling 268.5 kilograms). Further, the jury convicting Mr. Kennedy returned a general verdict. Because only three underlying offenses are required to find a defendant guilty of engaging in a continuing criminal enterprise, the jury's general verdict does not elucidate how many and which underlying offenses they found. In the light most favorable to Mr. Kennedy, then, it is conceivable that the jury could have convicted him after unanimously agreeing on criminal conduct that only included 22.5 kilograms of cocaine (the sum of the quantities of the three lowest amounts of the five listed in the indictment).

Though Mr. Kennedy's attorney objected at sentencing and in the PSR to an inflated weight not found by the jury, no additional fact-finding occurred before Mr. Kennedy was sentenced to the full 1,422 kilos. Under the then-mandatory sentencing

guidelines, Mr. Kennedy's only available sentence was life without parole. Had he instead been held responsible only for the amount found by the jury, the lowest available sentence would have been just over 20 years, and the *maximum* sentence would have been 27 years and 3 months.[3] While, again, the Supreme Court's decision in *Booker* cannot be retroactively applied, its reasoning again provides a cautionary warning on the dangers of sentences enhanced by facts not found by the jury:

> As far as the defendants are concerned, they face significantly higher sentences—in Booker's case almost 10 years higher— because a judge found true by a preponderance of the evidence a fact that was never submitted to the jury. Regardless of whether Congress or a Sentencing Commission concluded that a particular fact must be proved in order to sentence a defendant within a particular range, "[t]he Framers would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbours,' rather than a lone employee of the State." *Blakely,* 542 U.S., at 313–314, 124 S.Ct., at 2543 (citation omitted).

*Booker*, 543 U.S. at 238.

Further, even if the weight remained as calculated in 1992, the importance of that drug quantity in calculating Mr. Kennedy's sentence has changed. Both Amendment 505 and Amendment 782 would result in a base offense level of only 38. After adding the 4-level increase for continuing criminal enterprise in § 2D1.5 this would yield an offense level of 42. Combined with Mr. Kennedy's criminal history category II, this would yield

---

[3] Under the version of § 2D1.1 (c)(5) in place at the time 22.5 kilograms would have resulted in a base offense level of 34. With the 4 levels added by the continuing criminal enterprise under § 2D1.5 (a)(1), this would have resulted in an offense level of 38. In conjunction with his criminal history category of II, Mr. Kennedy's guidelines range would have been 262–327.

a sentencing range of 360 months to life. Thus under Amendment 505 his sentencing range is reduced and he is eligible for reconsideration under § 3582(c)(2).

These numerous developments are part of a larger change in the manner that non-violent drug offenses like Mr. Kennedy's are sentenced today. This sea change is motivated in part by attempts to relieve pressure on an overtaxed system:

> [Amendment 782] was also motivated by the significant overcapacity and costs of the Federal Bureau of Prisons. The Sentencing Reform Act directs the Commission to ensure that the sentencing guidelines are "formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons." See 28 U.S.C. § 994(g). Reducing the federal prison population and the costs of incarceration has become an urgent consideration. The Commission observed that the federal prisons are now 32 percent overcapacity, and drug trafficking offenders account for approximately 50 percent of the federal prison population (100,114 of 199,810 inmates as of October 26, 2013, for whom the Commission could determine the offense of conviction). Spending on federal prisons exceeds $6 billion a year, or more than 25 percent of the entire budget for the Department of Justice. The Commission received testimony from the Department of Justice and others that spending on federal prisons is now crowding out resources available for federal prosecutors and law enforcement, aid to state and local law enforcement, crime victim services, and crime prevention programs, all of which promote public safety.
>
> . . .
>
> Finally, the Commission relied on testimony from the Department of Justice that the amendment would not undermine public safety or law enforcement initiatives. To the contrary, the Commission received testimony from several stakeholders that the amendment would permit resources otherwise dedicated to housing prisoners to be used to reduce overcrowding, enhance programming designed to

> reduce the risk of recidivism, and to increase law enforcement and crime prevention efforts, thereby enhancing public safety.

U.S.S.G.Supp. to App. C, Amendment 782 (Nov.2014) (Reason for Amendment, ¶¶ 13, 17).

*C. Thomas Kennedy's life without parole sentence depletes the moral force of that sentence.*

Aside from the death penalty, life without parole is the harshest punishment a court can impose. In the federal system, where the death penalty is narrowly available and exceedingly rare,[4] life without parole is the harshest sentence possible in nearly all prosecutions for virtually every offense.

In determining a sentence courts must choose a punishment "sufficient but not greater than necessary," § 3553(a), "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A). Mr. Kennedy fully acknowledges the seriousness of his crime, and concedes that it warrants severe punishment. Mr. Kennedy simply asks that this Court take note of the punishment he has already endured. Mr. Kennedy has spent 24 years in prison atoning for his crime. There are attorneys admitted to this state's bar association who were not born when Mr. Kennedy was sentenced.

---

[4] The death penalty was imposed by federal courts just 71 times between 1973 and 2013, and only three people have been executed. Bureau of Justice Statistics, U.S. Dep't of Justice, NCJ 248448, Capital Punishment, 2013 Statistical Tables (2014), p. 20, available at http://www.bjs.gov/content/pub/pdf/cp13st.pdf.

This is a different world than the one that sentenced Mr. Kennedy to die in prison for a non-violent drug crime. Life without parole sentences in general are even viewed with some skepticism—the Supreme Court has recently recognized that life without parole is different in kind to even the longest sentences:

> [L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable.

*Graham v. Florida*, 560 U.S. 48, 69 (2010) (citations omitted). The Court explained that:

> [T]this sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days.

*Id.* at 70 (quoting *Naovarath v. State*, 105 Nev. 525, 526, 779 P.2d 944 (1989)). A longtime friend of Mr. Kennedy's prays that he will get a chance at redemption. She writes to this Court "I thank God for second chances, because He knew that we would all need one someday. Tommy is deserving of that someday, and I pray that that day is now." Letter of DeDe Robinson (Attached as Exhibit-8).

## Conclusion

Amendment 505 to the Sentencing Guidelines reduces Mr. Kennedy's sentencing range to 30 years (360 months) to life from a previously mandatory life without parole sentence. Accordingly, this Court has the authority to review that sentence under § 3582(c)(2).

**WHEREFORE**, Mr. Kennedy respectfully requests that this Court grant him the chance to earn the right to redeem himself by sentencing him to a term of years at the low end of his amended guidelines range.

Respectfully submitted this 6th day of April, 2015.

                              CLAUDE J. KELLY
                              Federal Public Defender

                              <u>/s/Gary V. Schwabe, Jr</u>
                              GARY V. SCHWABE, JR.
                              Assistant Federal Public Defender
                              Hale Boggs Federal Building
                              500 Poydras Street, Suite 318
                              New Orleans, Louisiana  70130
                              Telephone:  (504) 589-7930
                              La. Bar Roll No.  19780

## **CERTIFICATE**

    I hereby certify that on April 6, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Richard Pickens, Assistant United States Attorney.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

                        /s/Gary V. Schwabe, Jr.
                        GARY V. SCHWABE, JR.
                        Assistant Federal Public Defender