UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

v.                                          NO. 91-473

THOMAS RAY KENNEDY, III                     SECTION "F"


ORDER AND REASONS

Before the Court is the defendant's motion to reduce his sentence under 18 U.S.C. § 3582(c)(2). For the reasons that follow, the motion is GRANTED.[1]

Background

Twenty-four years ago, Thomas Kennedy was arrested at a Federal Express, where he had mailed cocaine as part of a drug enterprise. He is serving a life sentence. Under the then-mandatory United States Sentencing Guidelines, Mr. Kennedy was sentenced to a term of life in prison for engaging in a Continuing Criminal Enterprise (CCE) in violation of 21 U.S.C. § 848,[2] and

---

[1] The defendant has also filed a motion to correct judgment under Rule 60. The reasons for its denial are discussed briefly.

[2] 21 U.S.C. § 848(c) sets forth the elements of the offense:
   [A] person is engaged in a continuing criminal
        enterprise if–
        (1) he violates any provision of
        this subchapter or subchapter II of
        this chapter the punishment for
        which is a felony, and
        (2) such violation is a part of a
        continuing series of violations of

1

twenty years for conspiring to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846.[3]  Kennedy had led a group of five or more persons[4] who, according to a log book, distributed about 1,400 kilograms of cocaine over the course of several years.  The conspiracy charge was subsequently vacated on appeal, because it violated double jeopardy.  United States v. Kennedy, 9 F.3d 103 (5th Cir. 1993) (per curiam).  The Fifth Circuit declined to remand for resentencing on the CCE conviction.  Id.

After the direct appeal, proceeding without the benefit of counsel, Kennedy twice moved to modify his life sentence under 18 U.S.C. § 3582(c), in spring 2005 and summer 2008.  Amendment 505 to the Sentencing Guidelines had changed his guideline sentence from mandatory life in prison to a range of 360 months to life.  This

---

this subchapter or subchapter II of this chapter—
(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
(B) from which such person obtains substantial income or resources.

Kennedy's underlying offense referenced in subsection (1) was cocaine distribution.

[3] The conspiracy charge resulted in a 240-month sentence to be served concurrently.

[4] The group was called M.A.T.D., the letters representing the first initials of its principal members.  It shared its name with a music production company that the four men operated.  Other lower-level people were involved in the physical transportation of drugs, thus reaching the key number of five.

Court reapplied the sentencing factors set forth in 18 U.S.C. § 3553(a) and concluded that a life sentence remained justified. Kennedy appealed the second denial.  The Fifth Circuit dismissed his appeal on the merits.  United States v. Kennedy, 408 F. App'x 856, 857 (5th Cir. 2011) (per curiam) (reviewing for abuse of discretion and holding that the district court sufficiently considered the appropriate factors).

In September 2014, Kennedy filed this motion to modify his life sentence pursuant to § 3582(c)(2).  Upon reviewing portions of the record and the response from the government, the Court found that its consideration of the motion would be furthered by the appointment of counsel for Kennedy, as is the practice in current sentencing amendment cases, and supplemental briefing.  Counsel contends that Kennedy's sentence is reviewable not only pursuant to Amendment 505, as considered in the prior motions, but also Amendment 591.

I.

The government contends that under out-of-circuit case law, this Court lacks jurisdiction to hear Kennedy's motion because it is not his first.  The defendant counters that the Fifth Circuit has not ruled that successive motions under § 3582(c)(2) are unreviewable; that the Ninth and Third Circuits--under facts similar to this case--have found that there is no jurisdictional bar on successive motions; and that in the absence of controlling

authority, this Court should look to the language of the statute itself and not create a limitation where none is imposed by Congress.  The defendant's arguments are far more persuasive than the government's.

The government relies on cases from the Seventh, Fourth, and Tenth Circuits to support its argument that federal district courts do not have jurisdiction to consider successive § 3582(c)(2) motions.  In United States v. Redd, 630 F.3d 649 (7th Cir. 2010), and United States v. Goodwyn, 596 F.3d 233 (4th Cir. 2010), however, the defendants had already received one sentence reduction and were seeking a second.  The question thus was whether the court could grant more than one sentence modification based on only one amendment to the Guidelines.  That is not the question at issue here.  United States v. Randall, 666 F.3d 1238 (10th Cir. 2011), the third out-of-circuit case on which the government relies, concerned the timing of the filing of a motion to reconsider a § 3582(c)(2) motion.  Although it is now the law of the Tenth Circuit that such a motion for reconsideration must be brought within the time granted to appeal that order, this Court is not in the position to fashion the same law for this circuit.  Moreover, Kennedy's current motion is not simply a motion for reconsideration, because it is based in part on a different

Guideline amendment than the other motions.[5]

The Ninth Circuit in <u>United States v. Trujillo</u>, under circumstances similar to those at issue here, considered and rejected the rulings by some circuits that district courts lack the authority to consider subsequent § 3582(c)(2) motions. 713 F.3d 1003 (9th Cir. 2013). In 1993 Trujillo had been convicted of conspiracy to possess and of possessing with the intent to distribute 2,915 kilograms of cocaine and was sentenced to 360 months imprisonment. Amendment 505 lowered his Guideline range, and he moved for a reduction of his sentence under § 3582(c)(2). The district court denied the reduction, invoking an application note that allowed an upward departure for excessive drug quantities. Thirteen years later, Trujillo again moved to reduce his sentence under § 3582(c)(2), arguing in part that a reduction was warranted by various factors under § 3553(a), including family ties, lack of other criminal history, post-sentencing rehabilitation, and the need to avoid unwarranted sentencing disparities. The district court again denied the motion because of the amount of drugs involved and did not discuss the § 3553(a) factors. On appeal, the government submitted that the district court lacked subject matter jurisdiction to consider Trujillo's

---

[5] The government also incorrectly contends that Kennedy's motion is akin to a successive habeas motion. <u>See</u> <u>United States v. Jefferson</u>, 464 F. App'x 191, 193 (5th Cir. 2010) (per curiam) (finding that the district court erred when it treated the defendant's § 3582 motion as a § 2255 motion).

second motion, an argument that the Ninth Circuit found "relie[d] on a strained reading of the statute." Id. at 1006.  The court held that § 3582 contains no jurisdictional bar preventing the district court from entertaining a second motion, and that the district court erred in failing to address the § 3553(a) factors.[6]

In resolving this question of statutory construction, the Court finds most persuasive the language of the statute itself, rather than the holdings of the readily distinguishable case literature on which the government relies.  Section 3582(c)(2), unlike the federal habeas corpus relief statute, contains no bar on successive motions.  The Supreme Court has instructed courts to construe statutory limitations as nonjurisdictional in the absence of clear direction from Congress: "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed . . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Arbaugh v. Y&H Corp., 546 U.S. 500, 515-16 (2006).  Given Congress's silence, this Court, like the Third and Ninth Circuits, finds no compelling

---

[6] The Ninth Circuit echoed the Third Circuit's ruling in United States v. Weatherspoon, 696 F.3d 416, 421 (3d Cir. 2012), that "[a]fter all, a rule derived from congressional silence does not support an inference that Congress has 'clearly stated' its intent to limit a district court's jurisdiction to one § 3582(c)(2) motion."

argument to adopt the government's view of § 3582(c)(2) and superimpose a jurisdictional bar.[7]

## II.

The government contends that Kennedy's arguments are barred under the common law doctrine of "the law of the case," and under general concepts of waiver because he failed to appeal the denial of his first § 3582(c)(2) motion.  But the government did not raise these issues in response to Kennedy's second motion, and so any waiver-based argument is itself waived.

"The law of the case doctrine," the Fifth Circuit has held, "provides that a decision of a factual or legal issue by an appellate court establishes the law of the case and must be followed in all subsequent proceedings in the same case in the trial court." Lyons v. Fisher, 888 F.2d 1071, 1074 (5th Cir. 1989) (internal quotation omitted).  The government here does not contend that the Fifth Circuit's affirmance of this Court's second denial of Kennedy's motion to reduce his sentence is the law of the case, but, rather, that this Court's prior denials constitute the law of

---

[7] Section 3582(c)(2) states:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . ., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the sentencing commission.

the case.

The government relies on one sentence from a per curiam, unpublished § 3582(c)(2) case in which the Fifth Circuit stated, "Under the law of the case doctrine, [the defendant's] claims concerning Amendments 505 and 516 are barred from consideration, as they were presented to the district court in a § 3582 motion filed in 1997." United States v. Jefferson, 464 F. App'x 191, 193 (5th Cir. 2010) (per curiam). The government, allowing the misimpression that this statement forecloses review of Kennedy's motion, does not place it in context, nor does it provide this Court with a copy of the 1997 motion at issue or the court's ruling on it. Did the district court in 1997 specifically find that Amendments 505 and 516 applied to reduce Jefferson's guideline range but use its discretion to hold that modification was not warranted? This Court's research reveals that Jefferson's pre-Amendment offense level was 48 (42 for the drug quantity, plus 4 for his leadership role, plus 2 for obstruction of justice), resulting in a life sentence. See Gov't's Resp. in Opp. to Mtn. to Modify the Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2), United States v. Jefferson, No. 93-21 (N.D. Miss. Sept. 4, 2007), ECF No. 46; Mtn. to Reduce and Modify Pet'r's Sentence Pursuant to 18 U.S.C. § 3582(c)(2), United States v. Jefferson, No. 93-21 (N.D. Miss. Dec. 1, 1997) (explaining that the defendant planned to attack the other enhancements of his offense level to reach a lower

8

range than existed at the original sentencing); Order Den. Mtn. for Reduction of Sentence, <u>United States v. Jefferson</u>, No. 93-21 (N.D. Miss. June 26, 1998) (summarily denying the motion in a half-page order). Amendment 505 lowered Jefferson's offense level to 44, but that level still called for a life sentence. Thus, Amendment 505 did not provide a basis for a sentence reduction under § 3582(c)(2). <u>See</u> 18 U.S.C. § 3582(c)(2) ("In the case of a defendant who has been sentenced to a term of imprisonment based on a *sentencing range* that has subsequently been lowered by the Sentencing Commission[,] . . . the court may reduce the term of imprisonment.") (emphasis added). And Amendment 516 simply did not apply to Jefferson's case. The government's reliance on Jefferson's case is misplaced. If there is a precedential, or even persuasive, case on point that supports the government's law of the case argument, the government has failed to provide it.[8]

---

[8] The government cites two other cases, both of which are unavailing. In <u>United States v. Escobar-Urrego</u>, 110 F.3d 1556, 1560-61 (11th Cir. 1997), the court found that the defendant could not use an amendment to the guidelines to re-litigate the quantity of drugs that was attributed to him. In <u>United States v. Williams</u>, 517 F.3d 801, 806-07 (5th Cir. 2008), the court held that <u>United States v. Booker</u>, which had rendered the sentencing guidelines advisory, was an intervening change in law that allowed the district court to impose a sentence greater than the guideline range, even though the Fifth Circuit had previously ruled that the facts of the case did not justify an upward departure. These cases do not answer the question presented here.

III.

Kennedy contends that Amendment 591 results in a lower guideline range in this case.  He submits that because his original conspiracy conviction was vacated on appeal, that offense is no longer available as the basis for calculating his guideline range for the remaining CCE conviction.  Without the availability of a particular offense to cross-reference with § 2D1.1, the default offense level of 38 from § 2D1.5(a)(2) would apply.

Amendment 591, which became effective in November 2000, "address[ed] a circuit conflict regarding whether the enhanced penalties in § 2D1.2 appl[ied] only in a case in which the defendant was convicted of an offense referenced to that guideline or, alternatively, in any case in which the defendant's relevant conduct included drug sales in a protected location or involved a protected individual."  Federal Sentencing Guidelines Manual Amendment 591 (Reasons for Amendment).  Here, § 2D1.5 is consistent with the Statutory Index for Kennedy's CCE conviction, and Kennedy's sentence did not include an enhancement under § 2D1.2.  Thus, Amendment 591 does not apply to Kennedy's sentence.  See United States v. Wood, 231 F. App'x 368 (5th Cir. 2007).[9]

---

[9] To the extent that Kennedy seeks to challenge, by way of his sentence modification motion or the subsequent motion to correct judgment, the quantity of drugs attributed to him at his sentencing, that quantity remains unchanged.  Kennedy contends that because his conspiracy count was vacated on appeal, he should have attributed to him only the drug quantity specified in the indictment: 268.5 kilograms.  Instead, the court relied on the

IV.

Section 3582(c)(2) provides that a court may not modify a term of imprisonment unless the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," in which case "the court may reduce the term of imprisonment."[10]  In deciding whether to reduce the term of imprisonment, the court must follow the mandates of 18 U.S.C. § 3553(a), which reads:

> (a) Factors To Be Considered in Imposing a Sentence.— The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed—
>>
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B) to afford adequate deterrence to criminal conduct;

---

quantity of drugs outlined in a log book found in a friend's residence.  The Presentence Investigation Report used the log book to attribute more than 1,400 kilograms of cocaine to Kennedy.  The court's reliance on the PSR was proper at the time and will not be upset at this late stage.

[10] Again, there is no dispute that enactment of Amendment 505 by the Sentencing Commission changed Kennedy's guideline sentence from life in prison to a range of 360 to life.  The government, however, does not offer any analysis of the § 3553(a) factors.

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

(ii) that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States

12

Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

(B) that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The Court considers in turn every factor that applies to this case.[11]

---

[11] Section 3553(a)(4)(B), which considers violations of probation or supervised release, is inapplicable. As is § 3553(a)(7), calling for restitution to victims, because there are no direct

*A. § 3553(a)(1)*

First, the Court considers the nature and circumstances of Kennedy's offense and does not take lightly the seriousness of Kennedy's conviction under 21 U.S.C. § 848(a).  A jury found him guilty of having been an organizer of a profitable cocaine distribution organization that operated in several cities for several years.  Count 1 of the superseding indictment charged Kennedy with engaging in a continuing criminal enterprise from 1984 to his arrest in fall 1991, of committing a series of violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970, including:

> 1.  On or about September 1, 1986, in Los Angeles, California; Dade County, Florida; and Suwannee County, Florida, the defendant did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to possess with intent to distribute approximately two hundred and thirty-six (236) kilograms of cocaine hydrochloride, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.
>
> 2.  On or about April 16, 1989, in Los Angeles, California, and Tyler, Texas, the defendant did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to distribute approximately four and one-half (4 ½) kilograms of cocaine hydrochloride, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.
>
> 3.  On or about August 1, 1989, in Los Angeles,

---

victims of the offense.

14

California, and Washington, D.C., the defendant did
knowingly and intentionally combine, conspire,
confederate, and agree with others known and unknown to
the Grand Jury to distribute approximately eight (8)
kilograms of cocaine hydrochloride, a Schedule II
narcotic drug controlled substance, in violation of Title
21, United States Code, Section 841(a)(1); all in
violation of Title 21, United States Code, Section 846.

4. On or about and between July 15, 1990, and July 19,
1990, in Los Angeles, California, and Kenner, Louisiana,
the defendant did knowingly and intentionally combine,
conspire, confederate, and agree with others known and
unknown to the Grand Jury to distribute approximately ten
(10) kilograms of cocaine hydrochloride, a Schedule II
narcotic drug controlled substance, in violation of Title
21, United States Code, Section 841(a)(1); all in
violation of Title 21, United States Code, Section 846.

5. On or about September 23, 1991, in Hollywood,
California, the defendant did knowingly and intentionally
distribute in excess of ten (10) kilograms of cocaine
hydrochloride, a Schedule II narcotic drug controlled
substance, in violation of Title 21, United States Code,
Section 841(a)(1).[12]

The fifth act described in the superseding indictment culminated in

Kennedy's arrest.  He was caught at a FedEx in Hollywood, mailing

packages of cocaine powder interstate.  His fingerprints were on

the plastic bags in which the powder was wrapped, and the FedEx

receipts were found on his person.  The other instances are

attributed to Kennedy because of the acts of his co-conspirators;

they testified that Kennedy served as the contact with the source

of the drugs and set up deals, but he was not present for many of

the transactions.  There were no allegations that he or anyone in

---

[12] The underlying transactions forming the CCE count are reproduced
in their entirety because many of the documents in the record of
this decades-old case are not available electronically.

his group committed acts of violence.

In considering the first factor under the statute, the Court views Kennedy's offense of conviction in tandem with his personal history.  Before his CCE conviction, Kennedy had a minimal criminal history, which placed him in criminal history category II.  He had been convicted of two misdemeanor drug charges.  He had no convictions for crimes of violence, and has had no violent instances in prison.  His prison record is, in fact, exemplary.  Over the course of the twenty-four years he has spent in prison, he has received just three minor incident reports, and zero serious incident reports, avoiding fights entirely.  He has completed every self-help course that the Bureau of Prisons offers, has become a licensed barber and a published author, and he is one math class away from earning his college degree.  He facilitates self-awareness reentry development classes and mentors at-risk youth.  The Court has received several letters from friends and family attesting to his genuine remorse.

*B. § 3553(a)(2)*

Second, the Court considers the need for the sentence imposed.  The Court finds that a sentence of 360 months reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords an adequate deterrence to criminal conduct, and protects the public from further crimes of the defendant.  Kennedy, who sold drugs as a young adult from the mid-

1980s to the very early 1990s, will not be released from prison until he is sixty years old.  A lengthy sentence is warranted for this serious offense, and this sentiment is reflected in the applicable guideline range of 360 months to life.

Kennedy's crime is not among the gravest contemplated by our criminal justice system, though his life sentence is.  <u>Cf.</u> <u>Graham v. Florida</u>, 560 U.S. 48, 69-70 (2010).  Because the federal death penalty is exceedingly rare, life without parole is, in most instances, the most severe punishment available.[13]  Kennedy's crime, though disgraceful, is not deserving of the federal system's de facto harshest sentence of life without parole.[14]  A sentence that was imposed as being mandatory in 1992.  That mandate has given way to a proportionate range of 360 to life.

The Court quickly notes, under § 3553(a)(2)(D), that additional incarceration is not warranted to provide Kennedy with needed training or medical care.  In the course of the twenty-four

---

[13] From 1973 to 2013, federal courts sentenced just 71 defendants to death.  Ten of those sentences were overturned, and one was commuted.  In total, the federal government executed three prisoners between 1972 and 2013.  Bureau of Justice Statistics, U.S. Dep't of Justice, NCJ 248448, Capital Punishment, 2013 Statistical Tables (2014), p. 20, available at http://www.bjs.gov/content/pub/pdf/cp13st.pdf.

[14] There are currently 5,479 federal prisoners serving sentences of life with and without parole, amounting to 2.8% of the federal prison population.  Federal Bureau of Prisoners, Inmate Statistics, Sentences Imposed, available at http://www.bop.gov/about/statistics/statistics_inmate_sentences.jsp (last updated March 28, 2015).

years he has been imprisoned thus far, there is no dispute that Kennedy has received substantial educational and vocational training, and lifelong incarceration will not further any possible goals in this area. Quite to the contrary, Kennedy's extensive training has helped to prepare him for release.

### C. § 3553(a)(3)

Third, the sentences available to the Court are within the range of 360 months to life. The Court sees every reason to impose a sentence at the low end of the now-applicable guideline range. No aggravating factors are present; the defendant has no history of violence, either inside or outside of prison.

### D. § 3553(a)(4)

Fourth, Kennedy's guideline range today is 360 months to life because he has a total offense level of 42 and a criminal history category of II. The base level is calculated from the quantity of cocaine that was included in the Presentence Investigation Report, which was more than 1,000 kilos. This yields 38, plus the four-level increase for the CCE conviction. The parties acknowledge that Kennedy's current total offense level is 42. His original was 44, and Amendment 505 called for a two-level reduction.

### E. § 3553(a)(5)

Fifth, policy statements issued by the Sentencing Commission favor a sentence of a term of years, rather than one of life. In explaining the reasons for Amendment 505, the Commission wrote:

18

This amendment sets the upper limit of the Drug Quantity Table in § 2D1.1 at level 38. The Commission has determined that the extension of the Drug Quantity Table above level 38 for quantity itself is not required to ensure adequate punishment given that organizers, leaders, managers, and supervisors of such offenses will receive a 4-, 3-, or 2-level enhancement for their role in the offense, and any participant will receive an additional 2-level enhancement if a dangerous weapon is possessed in the offense. The Commission, however, has not foreclosed the possibility of an upward departure above offense level 38 on the basis of drug quantity in an extraordinary case. In addition, this amendment corrects a typographical error in a statutory reference.

FCJ Federal Sentencing Guidelines Manual Amendment 505 (11/1/14).

The Commission thus felt it appropriate for Kennedy's crime to result in a total offense level of 42, rather than 44, dropping the lower end of his guideline range to 360 months.[15]

### F. § 3553(a)(6)

Finally, the Court must consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. In this case, defendant Damon Ketchens,[16] Kennedy's then-friend and partner, is most akin

---

[15] In the Court's experience, the government's recent policy is not to oppose a sentence modification after a guideline amendment, except in cases where the defendant has a violent prison record, which is not the case here.

[16] Ketchens represents the "D" in M.A.T.D. According to trial testimony, "M" and "A" did not have leadership roles to the same extent as Ketchens and Kennedy.

to Kennedy.[17]  Ketchens testified at Kennedy's trial that until his own arrest, he co-managed the drug organization alongside Kennedy and similarly derived substantial income from it.  Ketchens was convicted in the Northern District of Florida of conspiracy, possession with intent to distribute cocaine, and interstate travel to carry out unlawful activity.  In the Central District of California, he was convicted of conspiracy to distribute narcotics and possession with intent to distribute narcotics.  He was sentenced to a term of imprisonment of 40 years, but because his case predated the abolishment of federal parole, he was eligible for parole and released in 2006.

The Court acknowledges that although Ketchens' role in the drug organization was similar to Kennedy's, he was not convicted under the Continuing Criminal Enterprise statute.  The Court thus looks to defendants who were so convicted.[18]  For example, brothers Demetrius and Terry Flenory led for several years a drug trafficking organization called the Black Mafia Family.  Founded in the late 1980s in Detroit, Michigan, the organization established cocaine distribution cells throughout the United States and had direct links to Mexican drug cartels.  Indictments targeted over

---

[17] See Letter from the Bureau of Prisons, Ketchens v. United States, No. 05—51 (D. Minn. Aug. 17, 2005), ECF No. 1 (detailing his convictions and sentences in preparation for his release from prison).

[18] Again, the government offers up no helpful examples that would support its position that life is the only justifiable sentence.

150 members of the organization, and prosecutors alleged that it made over $270 million.[19]   In 2007 in the Eastern District of Michigan, the brothers pled guilty[20] to Continuing Criminal Enterprise and money laundering and were subsequently sentenced to 360 months for the CCE violations.[21]   They are both scheduled for release in 2032.   Reason dictates that Kennedy's sentence align with that of the Flenory brothers, whose crimes are still more serious than his own.[22]

---

[19]  A review of the trial transcript shows that Kennedy's organization involved maybe a dozen people at most.  The evidence showed that the organization's earnings, though substantial, came nowhere near $270 million.

[20]  Although the Court appreciates the important policy considerations favoring a lesser sentence for a defendant who acknowledges responsibility and pleads guilty, the distinction does not merit a life sentence in this case.  Had Kennedy pled guilty originally and received a two-level reduction, his guideline range in 1992 would have been 360 months to life, exactly what it is today without the reduction for acceptable of responsibility.  With the subsequent amendment to the Sentencing Guidelines, had he pled guilty, the low end of his guideline range today would be less than 360 months.  A sentence of 360 months thus takes into account that Kennedy did not accept responsibility at the time of his original sentencing.

[21] See Js., United States v. Flenory, No. 05-80955 (E.D. Mich. Sept. 16, 2008), ECF Nos. 1075, 1076.

[22] By contrast, Kennedy's life without parole sentence is shared by Rayful Edmond III, a well-known drug kingpin who is credited with introducing crack cocaine into the nation's capital.  Edmond's indictment alleged that in 1992, he and his associates bought between 1,000 and 2,000 kilograms of cocaine per week from individuals associated with the Medellín cartel.  His annual revenue was estimated at $300 million, and his organization was believed to have committed over 400 murders.  His trial was the first in Washington, D.C., history to include an anonymous jury, which sat encased in bulletproof glass.  Because of concerns of an armed escape attempt, Edmond was held at the maximum security

For the foregoing reasons and in accordance with the policy statement set forth at U.S.S.G. § 1B1.10 and after carefully considering the sentencing factors set forth in § 3553(a), the Court finds that a sentence of imprisonment of 360 months is "sufficient, but not greater than necessary" to comply with the purposes delineated by Congress and the Sentencing Commission.[23]

Accordingly, IT IS ORDERED that the defendant's sentence is hereby MODIFIED from life imprisonment to a term of 360 months. All other conditions imposed at the original sentencing remain unchanged.[24]

New Orleans, Louisiana, August 5, 2015

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

facility at Marine Corps Base Quantico and flown in by helicopter daily for his trial.  Edmond was convicted under subpart (b) of the continuing criminal enterprise statute, which calls for a mandatory life sentence for a person who engages in a continuing criminal enterprise that deals in vast amounts of drugs or receives $10 million in any twelve-month period.  Edmond then continued to direct his drug business from prison.

[23] It might be instructive to observe that the Court has taken note of the fact that the government's submissions seem, under the circumstances presented, substantially without merit.

[24] The defendant has filed a motion to correct judgment, seeking to amend the Judgement and Commitment Order and the Presentence Investigation Report to delete references to his conviction for conspiracy, because that conviction was vacated on appeal.  He also asks that the drug quantity related to his conspiracy charge be removed.  The motion is DENIED.  The drug quantity is relevant to the CCE sentence, and Presentence Investigation Reports are not subject to amendment after the sentence has been imposed.